**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | |
| ROBERT CURRIE and | : | |
| KATHLEEN CURRIE, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No.  13-6713 |
| | : | |
| STATE FARM FIRE AND CASUALTY | : | |
| COMPANY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**<u>MEMORANDUM</u>**

**ROBERT F. KELLY, Sr. J.**                                      **AUGUST 19, 2014**

Presently before the Court is Defendant, State Farm Fire and Casualty Company's ("State Farm"), Motion for Partial Summary Judgment, Plaintiffs, Robert Currie and Kathleen Currie's ("Plaintiffs"), Response, State Farm's Reply, and Plaintiffs' Sur-Reply.  For the reasons stated below, the Motion is granted in part and denied in part.

**I.      BACKGROUND**

On October 3, 2013, Plaintiffs instituted this action by filing a Writ of Summons in the Bucks County Court of Common Pleas, and on October 21, 2013, Plaintiffs filed a Complaint averring breach of contract (Count I), and bad faith (Count II).  On November 19, 2013, State Farm filed a Notice of Removal to this Court.

Plaintiffs, husband and wife, own a dwelling at 504 Heatons Mill Drive, Langhorne, Pennsylvania (the "Property") which was covered by a homeowner's insurance policy (the "Policy") issued by State Farm.  On October 29, 2012, while Plaintiffs were away in Washington State, Superstorm Sandy struck the area causing a tree on the Property to crash into the dwelling resulting in damage.  Compl. ¶ 4.  The housesitter immediately contacted Plaintiffs to report the tree strike.  (Pls.' Resp. Mot. Summ. J at 2.)  Plaintiffs then contacted State Farm to report the loss.  (Id.)  They also contacted Kanga Roof ("Kanga"), a roofing company with whom Plaintiffs had a maintenance contract.  (Id.)

At a later date, an inspection of the loss was conducted by State Farm adjuster, Travis Hengst ("Hengst"), and Ted Vingless ("Vingless") of Kanga Roof.  (Id. at 3.)  Plaintiffs assert that the inspection focused on the exterior damage to the Property, although Plaintiffs recall showing interior damage in the first, second, and third floors to Hengst.  (Id.)  Plaintiffs recall Vingless verbally quoting the roof replacement at more than $100,000.  (Id.)

Thereafter, Plaintiffs received State Farm's estimate dated November 19, 2012, and State Farm's check for $56,940.54 (the actual cash value amount of the estimate less the deductible).  (Id.)  Plaintiff questioned the adequacy of the estimate including the roof replacement allowance of $50,338.47, especially in light of the verbal estimate given by Kanga of more than $100,000.  (Id., Ex. C at 15.)  Plaintiff then contacted Russell Roofing Contractors ("Russell") for a further estimate, and hired Richard Green & Son Public Adjuster ("Green"), and Tantala Associated, LLC ("Tantala") to assess damages.  (Id. at 3.)  On March 8, 2013, Green submitted to State Farm its estimated loss of $363,804.98, which incorporated estimates for roof and chimney replacement by Russell in the amount of $132,944 and $29,158.  (Id. at 3-4.)  The engineering

report of Tantala was also submitted to State Farm.  (Id.)  These submissions prompted State

Farm to hire its own engineer, Gary Popolizio (Popolizio"), who inspected the dwelling on April

11, 2013, with Hengst.  (Id. at 4.)  This inspection resulted in a second estimate from State Farm

dated May 27, 2013, and a supplemental payment to Plaintiffs in the amount of $9,502.09.  (Pls.'

Resp., Ex. D.)

     Plaintiffs assert that they still did not have sufficient funds to properly repair the damages

from the loss and, subsequently, through Green, sent State Farm written demands for appraisal on

June 4 and June 18, 2013.[1]  (Id., Ex. J.)  State Farm rejected the demand in a denial letter dated

July 2, 2013, which states:

> This claim involves certain items for which State Farm has not
> admitted liability.  These items include, but are not necessarily
> limited to, sanding and refinishing of the wood floors.  Since the
> dispute goes beyond the amount of loss, appraisal is not an

---

[1]The Policy provides for appraisal as follows:

> Appraisal.  If you and we fail to agree on the amount of loss, either one
> can demand that the amount of the loss be set by appraisal.  If either
> makes a written demand for appraisal each shall select a competent
> disinterested appraiser.  Each shall notify the other of the appraisers
> identity within 20 days of the receipt of the written demand.  The two
> appraisers shall then select a competent, impartial umpire.  If the two
> appraisers are unable to agree upon an umpire within 15 days you or we
> can ask a judge of a court of record in the State where the residence
> premises is located to select an umpire.  The appraisers shall then set the
> amount of the loss.  If the appraisers submit a written report of an
> agreement to us the amount agreed upon shall be the amount of the loss.
> If the appraisers fail to agree within a reasonable time, they shall submit
> their differences to the umpire.  Written agreement signed by any two of
> these shall set the amount of the loss.  Each appraiser shall be paid by
> the party selecting that appraiser.  Other expenses of the appraisal and
> the compensation of the umpire shall be paid equally by you and us.

(Pls.' Resp., Ex. A at 14.)

appropriate method of resolution.

(Def.'s Mot. Summ. J., at 4.)

State Farm filed the instant Motion for Partial Summary Judgment on June 16, 2014. Plaintiffs filed a Response on June 27, 2014.  State Farm filed a Reply on July 11, 2014, and Plaintiffs a Sur-Reply on July 16, 2014.

**II.      STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991).  The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "A fact is material if it could affect the outcome of the suit after applying the substantive law.  Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'"  Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Once the moving party

4

has produced evidence in support of summary judgment, the non-moving party must go beyond

the allegations set forth in its pleadings and counter with evidence that presents "specific facts

showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see Big Apple BMW, Inc.

v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992).  "More than a mere scintilla of

evidence in its favor" must be presented by the non-moving party in order to overcome a

summary judgment motion.  Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996).

If the court determines that there are no genuine issues of material fact, then summary judgment

will be granted.  Celotex, 477 U.S. at 322.

### III.   DISCUSSION

#### A.  Count I- Breach of Contract

State Farm first asserts that Plaintiffs' breach of contract claim as to the alleged damages

to the wood floors of the Property should be dismissed because there is no genuine issue of

material fact that the wood floors were damaged by Superstorm Sandy.  (Def.'s Mot. Summ. J. at

10.)  Under Pennsylvania law, a plaintiff asserting a claim for breach of contract must allege "the

existence of a contract, including its essential terms; . . . a breach of a duty imposed by the

contract; and . . . resultant damage."  Pittsburgh Const. Co. v. Griffith, 834 A.2d 572, 580 (Pa.

Super. 2003).

State Farm claims that Plaintiffs have failed to establish that the loss sustained to the

Property is covered by the Policy.  (Def.'s Mot. Summ. J. at 12.)  State Farm states that the

"[P]olicy provides coverage for accidental direct physical loss to the covered property subject to

specific conditions and exclusions."  (Id.)  It further asserts that after inspecting the Property,

independent adjuster Hengst did not provide an estimate for any damages to the Property's hardwood floors.  (Id.)  State Farm adds that Popolizio's report concluded that there was no loss related damage to the wood floors of the Property, and Tantala's January 15, 2013 report, provided by Plaintiffs, does not dispute Popolizio's opinion that the Property's floors were not damaged by the storm.  (Id.)  State Farm maintains that it denied Plaintiffs' request for appraisal because their claims involved items for which it had not admitted liability or coverage under the terms of the Policy, including sanding and refinishing of the Property's wood floors.  (Id.)

Plaintiffs respond that they have submitted evidence which raises a genuine issue of material fact as to whether State Farm breached the terms of the insurance contract.  We agree. Plaintiffs assert that they have submitted the opinion of a flooring expert, Anthony Palandro ("Palandro"), who concluded in his report that "[i]nspection of the floors in the living room and master bedroom revealed sections with a discoloration on the surface of the planks."  (Pls.' Resp., Ex. E.)  Palandro added that it was his "professional opinion that the discoloration is consistent with storm damage and water intrusion."  (Id.)

Defendant's structural engineer, Popolizio, stated in his May 2, 2013-report that on the third floor of the Property "a stain mark at the ends where two pieces of wood 'butted' together was noted in a few locations.  These marks were not typical or consistent with water damage." (Def.'s Mot. Summ. J., Ex. E at 5.)  With regard to the second floor of the Property, Popolizio stated that the "wood floor alongside the fireplace and chimney area was examined.  Evidence of older surface blemishes including sanding marks and paint was noted.  No signs of any water damage to the wood floor were observed."  (Id. at 6.)  With regard to the first floor, Popolizio stated that "[v]iewing the wood floors found similar conditions of blemishes, sanding marks, and

6

paint speckles to exist with no evidence of water damage to the floor within this room of the home." (Id.)

Here, we find a genuine of material fact at issue because both parties have submitted conflicting evidence from their experts concerning the issue of whether or not the storm damaged the Property's hardwood floors.  Accordingly, viewing all the evidence which has been tendered in the light most favorable to the party opposing the motion, we deny State Farm's Motion for Summary Judgment on Plaintiffs' breach of contract cause of action.  See Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).

### B. Count II- Bad Faith Claim

### 1. Refusal to Agree to an Appraisal

State Farm next asserts that Plaintiffs' bad faith claim should be dismissed because "Plaintiffs have failed to produce evidence that State Farm acted in bad faith in denying Plaintiffs' request for appraisal when there was a clear coverage dispute."  (Def.'s Mot. Summ. J. at 12.)  State Farm argues that the Policy mandates that appraisal is only available "if you and we fail to agree on the amount of loss."  (Id. at 13.)

A plaintiff asserting a claim for bad faith must allege that the defendant "(1) did not have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim."  Greene v. United Services Auto. Ass'n, 936 A.2d 1178, 1189 (Pa. Super. 2007).  A "motive of self-interest or ill-will" is probative of whether the defendant knew or recklessly disregarded its lack of a reasonable basis in denying the claim. Id. at 1191.

It is well-established law in Pennsylvania that "in order for a case to be appropriate for appraisal, there are generally two conditions that must be met: (1) the defendant has admitted liability for the loss; and (2) there must be a dispute only as to the dollar amount of the loss." Ice City, Inc. v. Ins. Co. Of N. America, 314 A.2d 236, 240 (Pa. 1974); See also Banks v. Allstate, No. 91-6982, 1992 WL 102885, at *2 (E.D. Pa. May 7, 1992). State Farm asserts that it denied coverage in a July 2, 2013-letter stating that "[t]his claim involves certain items for which State Farm had not admitted liability. These include, but are not necessarily limited to, sanding and refinishing of the wood floors." (Def.'s Mot. Summ. J. at 15.) State Farm argues that Plaintiffs have failed to produce sufficient evidence of an agreement between the parties regarding the coverage dispute, and without an agreement as to the coverage dispute, the appraisal provision of the Policy is not triggered. (Id.) State Farm further argues that because the appraisal provision cannot be triggered when there is not an admission of liability for the entire claim, its unwillingness to proceed to appraisal is not bad faith conduct and, thus, summary judgment should be granted as to this claim. (Id.)

The interpretation of an insurance policy is a question of law to be resolved by the court. Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006). When the policy's language is clear and unambiguous the court must give effect to that language. 401 Fourth Street v. Investors Ins. Co., 879 A.2d 166, 170 (Pa. 2005). But when the policy's language is ambiguous the court will construe the ambiguity in favor of the insured and against the insurer. Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999); Bateman v. Motorists Mut. Ins. Co., 590 A.2d 281, 283 (Pa. 1991).

It is also well-established that Pennsylvania law encourages the settlement of disputes

8

between an insured and an insurer about the amount of loss by appraisal.  <u>Ice City</u>, 314 A.2d at

240.  The Court in <u>Ice City</u> stated that "[a]ppraisal is an entirely appropriate means for settling

the dispute, and is indeed the favored practice."  <u>Id.</u>  A condition precedent to appraisal is that

there be an admission of liability and a dispute only as to the dollar value of the loss.  <u>Id.</u>  A

dispute of coverage, improper for appraisal, occurs when an insurance company claims an

exclusion of a loss under the terms of the insurance policy.  <u>See</u> <u>Banks v. Allstate</u>, No. 91-6982,

1992 WL 102885, at *1 (E.D. Pa. May 7, 1992) (applying Pennsylvania law; refusing to order

appraisal where company claimed some damage was not covered by the policy).  However, when

the parties merely disagree over the extent of damage or whether a covered peril is the cause of

certain damage, that is a dispute regarding the amount of loss and is proper for appraisal.

<u>Williamson v. Chubb Indem. Ins. Co.</u>, No. 11-6476, 2012 WL 760838, at *3-4 (E.D. Pa. Mar. 8,

2012).

      As noted, State Farm asserts that the dispute is over coverage and not the amount of loss.

On the other hand, Plaintiffs argue that the dispute is fundamentally a dispute about the amount

of loss caused by the storm, not a dispute about coverage.  (Pls.' Resp. at 13.)  According to

Plaintiffs, an appraisal of the amount of loss necessarily includes assessments of causation and

the scope of repairs, and, thus, a disagreement about those issues does not transform the parties'

dispute into a coverage dispute.  (<u>Id.</u> at 13-14.)  We agree with Plaintiffs and find that the parties'

disagreements represent a dispute as to the amount of loss, not as to coverage.  <u>See</u> <u>Williamson</u>,

2012 WL 760838, at *3-4; <u>see</u> <u>also</u> <u>Knop v. The Travelers Home and Marine Ins. Co.</u>, No.

10–cv–05506 (E.D. Pa. Dec. 12, 2010) (order compelling appraisal).

      The Court opined in <u>Williamson</u> that:

Estimating the dollar value of a loss presupposes a judgment of what repairs are necessary to recoup from the loss. Appraisers could not perform their duties if they were prohibited from opining on these matters. And in practice, where there have been two different assessments of the amount of loss — one by Plaintiffs' assessor, one by Defendant's — it is not surprising that the assessors may have some disagreement as to whether the covered occurrence actually caused a certain portion of the putative damage, as well as disagreements about the scope and method of necessary repairs. But to say such disputes are sufficient to negate the appraisal provision in the policy would effectively eliminate appraisal as a workable method of alternative dispute resolution.

Williamson, 2012 WL 760838, at *4.

We agree with the above, and are of the opinion that State Farm's interpretation of the appraisal clause in the Policy would render the appraisal process useless.  The only thing that State Farm would have to do to avoid appraisal under the Policy would be to disagree with an insured over whether a loss occurred from an event such as Superstorm Sandy and call it a "coverage" issue and not an "extent of loss" issue.  State Farm can characterize the dispute over the hardwood floors as a denial of coverage, but in reality, it is an extent of loss issue.  There is no question that State Farm insured Plaintiffs' property at the time the storm hit and insured it for losses from such.  The logical disagreements between an insured and the insurer after such an event would be as Williamson stated, "disagreement as to whether the covered occurrence actually caused a certain portion of the putative damage, as well as disagreements about the scope and method of necessary repairs."  2012 WL 760838, at *4.  This is the case here.  The parties disagree on the extent of the damages from the storm.  Plaintiffs assert that the storm damaged their wood floors and State Farm says it did not.  They also disagree on the scope of the repairs regarding the amount needed to fix Plaintiffs' roof.  We are of the opinion that it was

disingenuous of State Farm to characterize this disagreement as a coverage issue in order to avoid appraisal, especially in light of the fact that Pennsylvania law encourages the settlement of disputes regarding the amount of loss by appraisal.  Ice City, 314 A.2d at 240.  For these reasons, we deny State Farm's request to grant summary judgment on Plaintiffs' bad faith claim with regard to the issue of State Farm's refusal to go to appraisal in this matter.

### 2.  Handling of the Claim

Plaintiffs also assert that State Farm exercised bad faith in its dealings with Kanga, the roofing contractor with whom they had a maintenance contract.  (Pls.' Resp. at 21.)  Plaintiffs assert that the records produced by Kanga in discovery:

> clearly show that not only did State Farm ask Kanga to prepare a roof replacement estimate (which Kanga Roof did, in the amount of $128,793.31) but defendant then asked Kanga Roof to reduce it to match State Farm's estimate; and then, when plaintiffs complained to the DOI ("Department of Insurance") about State Farm's gross underestimation of plaintiffs' loss and damage State Farm told the DOI that the Curries "secured the roof estimate."

(Id. at 22.)  Plaintiffs assert that they never requested an estimate from Kanga, and that State Farm's misrepresentation to the DOI regarding who secured the Kanga estimate is egregious conduct on the part of State Farm and constitutes bad faith.  (Id.)

State Farm responds that "[a]lthough Plaintiffs allege that Defendant State Farm requested that Kanga Roof prepare an estimate to replace the Property's roof without Plaintiffs' knowledge or consent, Plaintiffs attach no summary judgment evidence in support of that allegation."  (Def.'s Reply at 3.)  State Farm maintains that Plaintiffs' contention that its log dated November 25, 2012, indicates that independent adjuster, Hengst, "directed Kanga Roof to

change its estimate" is incorrect.  (Id.)  State Farm avers that the log note merely states that Hengst spoke with a representative of Kanga Roof and compared estimates.  (Id., Ex. 1)  State Farm claims that at no point did Hengst indicate that he requested an estimate from Kanga or that he in any way "directed" them to change their estimate.  (Id.)  A review of this log supports State Farm's position that Hengst did not "direct" Kanga to change its estimate.  Rather, the log states that "CTR (Kanga) is changing some figures to match State Farm estimate."  (Id., Ex 1.)  We, therefore, find that Plaintiffs have failed to present evidence indicating that State Farm acted in bad faith in its dealings with Kanga.  In addition, Plaintiffs have not submitted any support for their claim that negotiations regarding the amount of construction repair costs and services to be provided constitutes bad faith conduct on the part of an insurer.

Moreover, State Farm asserts that Plaintiffs signed an authorization for Kanga to represent them and the Property regarding the instant insurance claim.  (Id. at 4.)  Defendants claim that an agreement between A. Brooks Construction (Kanga Roofing) and Plaintiffs was signed on October 31, 2012, and that, in this agreement, Plaintiffs agreed to have Kanga "represent them with the claim and come to an agreement on price and work to be performed." (Id., Ex. 2.)  Plaintiffs respond in a Sur-Reply that when they signed this document they were in Vancouver, British Colombia and had just been advised that the storm caused an enormous hole in their house, and that they believed they were only giving Kanga permission to provide emergency services.  (Pls.' Sur-Reply at 1-2.)  They state that they had no intention of authorizing Kanga to act as their public adjuster to this insurance claim.  (Id. at 2.)

However, regardless of what Plaintiffs' intentions were when signing this agreement, the fact of the matter is that they signed it and specifically gave Kanga the authority to represent

12

them regarding the "price and work to be performed" on the roofing claim.  (See Def.'s Reply,

Ex. 2.)  It appears that, if this wasn't Plaintiffs' intention, that their disagreement is with Kanga

and not State Farm.  Thus, for these reasons, we find that Plaintiffs have failed to submit

sufficient evidence indicating that State Farm acted in bad faith regarding its dealings with Kanga

and the roofing estimate.  Accordingly, we grant State Farm's Motion for Summary Judgment

only with regard to this specific issue in Plaintiffs' bad faith claim.

## IV.    CONCLUSION

We find that there are genuine issues of material fact with regard to Plaintiffs' breach of

contract claim.  We also deny State Farm's request to dismiss Plaintiffs' bad faith claim.  We

determined that there exists a genuine issue of material fact as to whether State Farm's refusal to

go to appraisal constitutes bad faith on its part.  We, however, also determined that summary

judgment should be granted to State Farm specifically on the issue of whether its dealings with

Kanga constituted bad faith.

An appropriate Order follows.